# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN JOHNSTON and
DAWN JOHNSTON,

    Plaintiffs,

v.

CASE NO. 06-11617
HON. LAWRENCE P. ZATKOFF
MAG. R. STEVEN WHALEN

S.D. WARREN CO. d/b/a
SAPPI FINE PAPER NORTH AMERICA,

    Defendant.
_____/

## OPINION & ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 18, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion in Limine to Exclude Reference to Federal and State Load Securement Rules [dkt 29]. The parties have fully briefed the motion. The Court finds that the parties have adequately set forth the relevant law and facts such that oral argument would not aid in the disposition of the instant motion. *See* E.D. Mich. LR 7.1(e)(2). Accordingly, the Court ORDERS that the motion be decided on the briefs submitted. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

Plaintiff John Johnston is a 58-year-old resident of Adrian, Michigan, who drives trucks on a part-time basis for L&M Trucking. Johnston has no formal training as a truck driver. Defendant is a paper manufacturer with paper mills located in Maine, Michigan, and Minnesota. On August 10, 2005, Johnston drove his truck to Defendant's paper mill located in Muskegon, Michigan, to pick up a load of cylindrical paper rolls weighing an aggregate of approximately 41,000 pounds. Pursuant to Defendant's policy, Johnston went to the driver's lounge while Dexter Clanton, one of Defendant's employees, loaded his trailer. Although Clanton does not remember loading Johnston's particular trailer, he testified that he always uses friction matting to secure rolls of paper in a trailer. After Clanton finished loading the truck, Johnston was given an opportunity to inspect the trailer. Johnston only examined the trailer to determine if the correct number of rolls had been loaded and to ensure that his load bar was still inside; he did not enter the trailer or determine if the rolls had been properly loaded.

After leaving the mill, Johnston prepared to merge onto I-94 from I-127 in Blackman Township, Michigan, via a C-shaped ramp. Johnston testified that he was driving at a normal speed. A third-party witness confirmed that he was not driving at an excessive speed. As he navigated the ramp, Johnston felt the truck shake, and it began to tip. At the top of the ramp, the truck rolled over on the driver's side. Johnston suffered fractures and tendon separation, and his treatment required the insertion of pins and screws in his arm.

Michigan State Trooper Mark Brown responded to the accident. Brown's report did not indicate that there was friction matting in the trailer. Brown testified that if there had been friction matting, he would have noted it in the report. Daniel Lee, a professor at Michigan State University

with experience in accident reconstruction and truck rollovers, inspected the truck approximately two weeks after the accident. Lee did not find friction matting in the truck, and he testified that the rollover was most likely due to load shift. Johnston filed suit in this Court on April 4, 2006, on the basis of diversity jurisdiction.

### III.  ANALYSIS

At trial, Defendant seeks to exclude any reference to the Federal Motor Carrier Safety Regulations ("FMCSR"), the Michigan Motor Carrier Act, and Mich. Comp. Laws § 257.720, all of which pertain in some manner to load securement. Defendant's primary basis for seeking the exclusion of such rules is that Defendant is a "shipper" and not covered by them. The FMCSR do not specifically exclude shippers, but Defendant points to some case law supporting the principle that the regulations do not apply to shippers. Because Defendant believes it never had to comply with the regulations, it argues that even if it failed to comply with them, such failure cannot evidence negligence. Defendant maintains that it owed no duty to Johnston under Michigan law. Defendant also argues that its actions or inactions did nothing to increase Johnston's risk. Additionally, Defendant maintains that Johnston could not have relied on Defendant's internal practices because Johnston knew nothing about load securement or friction matting.

Plaintiffs attack Defendant's arguments on many levels. First, Plaintiffs note that the scope of the FMCSR differs with respect to Part 393: Parts and Accessories Necessary for Safe Operation, which encompasses all employers, who are prohibited from even permitting a commercial motor vehicle to operate unless it is compliant with the regulations. Next, Plaintiffs argue that, regardless of its classification, Defendant conducted its operations as though the rules and regulations were

applicable to its operations. To this end, Plaintiffs note that Defendant held meetings, distributed memoranda, and otherwise emphasized the importance of abiding by the FMCSR starting sometime around 2003. Defendant does not dispute this behavior but rather argues that it is irrelevant since it was a voluntary choice and not an obligation.

This Court enjoys broad discretion in deciding whether to admit or exclude evidence. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 666 (6th Cir. 2000). The present motion is rooted in Defendant's belief that the federal and state load securement rules and regulations are irrelevant. Under the federal rules, relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is generally admissible except where expressly prohibited. Fed. R. Evid. 402. Alternatively, Defendant argues that admission of the federal and state load securement rules violates Rule 403 of the Federal Rules of Evidence because it will unfairly prejudice Defendant by creating an inference that Defendant was obligated to abide by the federal and state regulations.

The FMCSR apply generally to "all employers, employees, and commercial motor vehicles, which transport property or passengers in interstate commerce." 49 C.F.R. § 390.3. The commodity-specific portion of the FMCSR addressing standards for securing paper rolls, however, seems to be broader in its scope: "Every employer and employee shall comply and be conversant with the requirements and specifications of this part. No employer shall operate a commercial motor vehicle, or cause or permit it to be operated, unless it is equipped in accordance with the requirements and specifications of this part." 49 C.F.R. § 393.1(b). Under the regulations, an employer is "any person engaged in a business affecting interstate commerce who owns or leases

4

a commercial motor vehicle in connection with that business, or assigns employees to operate it." *Id.* § 390.5. The commodity-specific rules set forth minimum standards for commercial motor vehicles. Pursuant to the regulations, the term "commercial motor vehicle" includes "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle . . . [h]as a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater." *Id.* § 390.5.

Despite Defendant's declarations, it is not so clear that the FMCSR do not apply in this matter. Johnston's truck, which contained paper rolls weighing over 41,000 pounds, qualifies as a commercial motor vehicle, and Defendant certainly affects interstate commerce. It is less clear, however, whether Defendant "leases" trucks from L&M Trucking in satisfaction of the definition of "employer." The federal regulations pertaining to the securement of paper rolls apply to all employers who so much as cause a vehicle to operate. Defendant has not addressed this provision of the federal regulations. Instead, Defendant points to several cases from other jurisdictions that proclaim that shippers are exempt from the regulations. None of these cases, however, discuss the different scope involved in the FMCSR's commodity-specific provisions. In *Smith v. Northern Dewatering, Inc.*, for example, the Minnesota Supreme Court declared that "[s]hippers . . . are not subject to the FMCSR." No. 01-1948, 2004 U.S. Dist. LEXIS 2648, at *5–6 (Minn. Feb. 19, 2004). The *Smith* decision stemmed from the court's interpretation of 49 C.F.R. § 392.9(b), which addresses the operation of commercial motor vehicles and restricts its scope to "[e]very motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training,

5

assigning, or dispatching of drivers." 49 C.F.R. § 392.1. The *Smith* court, although citing requirements from section 393, did not address the different scope of that section. Accordingly, this Court finds the *Smith* decision unpersuasive.

In its reply brief, Defendant includes guidance from the FMCSR Handbook: "It is the responsibility of the motor carrier and the driver to ensure that any cargo aboard a vehicle is properly loaded and secured." This guidance, however, pertains to 49 C.F.R. § 392.9, which varies in scope from section 393. Plaintiffs correctly observe that section 393, which contains the provision pertaining to the securement of paper rolls and the use of friction matting, addresses a broader scope, addressed above. *See* 49 C.F.R. § 122. Section 390, advocated by Defendant as providing the appropriate scope for the matter, sets forth the general applicability for the entire subchapter. Many of the parts contained therein amend the general scope by beginning with a separate section entitled: "Scope of the Rules of this Part." In such instances, the part-specific scope controls over the general scope of the entire subchapter.

Even assuming that the FMCSR do not apply to Defendant, they still retain relevance in this matter. Under *United States v. Savage Truck Line, Inc.*, "[t]he primary duty as to the safe loading of property is . . . upon the carrier." 209 F.2d 442, 445 (4th Cir. 1953). *Savage*, however, does not absolve shippers of all responsibility:

> When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

*Id.* Here, Defendant took it upon itself to load Johnston's truck and did so in such a manner as to preclude Johnston from witnessing how the loading was accomplished. It does not appear that

Johnston would have been able to detect the presence or absence of friction matting had he conducted a reasonable inspection. At the very least, introduction of the FMCSR and Defendant's implementation of them will provide circumstantial evidence of the presence or absence of the friction matting. Because Defendant may be liable for latent defects in its loading of Johnston's truck, the FMCSR will also be relevant to Defendant's knowledge and understanding of safety measures in the industry. The Michigan Motor Carrier Safety Act adopts the FMCSR. *See* Mich. Comp. Laws § 480.11a. For the same reasons as those set forth above, then, the Court finds that the Michigan Motor Carrier Safety Act is relevant to this matter and shall not be excluded.

The Court reaches a different conclusion, however, with respect to Mich. Comp. Laws § 257.720, which mandates that "[a] person shall not drive or move a vehicle on a highway unless the vehicle is so constructed or loaded as to prevent its contents from dropping, sifting, leaking, blowing off, or otherwise escaping from the vehicle." Plaintiffs offer a unique interpretation of the statute, claiming that it applies because the paper rolls "escaped" the truck during the rollover. The Court is not inclined to adopt such an expansive interpretation of a statute meant to curb hazards created by materials escaping from vehicles while in transit. As the statute does not otherwise apply to the securement of paper rolls or the use of friction matting, it bears no relevance to the case at hand.

Lastly, the Court finds that Defendant will not be unfairly prejudiced by the admission of the FMCSR and the Michigan Motor Carrier Safety Act. The inclusion or exclusion of friction matting bears great relevance to the core issue in this case. As such, the probative value of these rules and regulations outweighs any prejudicial effect that might result from their introduction.

## IV. CONCLUSION

For the above reasons, Defendant's Motion in Limine is GRANTED in part and DENIED in part.

IT IS HEREBY ORDERED that neither party shall introduce or reference Mich. Comp. Laws § 257.720 at trial.

IT IS FURTHER ORDERED that either party may introduce or reference the pertinent sections of the Federal Motor Carrier Safety Regulations and the Michigan Motor Carrier Safety Act at trial.

IT IS SO ORDERED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: January 18, 2008


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 18, 2008.


s/Marie E. Verlinde
Case Manager
(810) 984-3290